**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**TERRY ANTONIO LEE**                                                                      **PETITIONER**
**ADC #120960**

**V.**                            **CASE NO. 5:18-CV-45-KGB-BD**

**WENDY KELLEY, Director,**                                                           **RESPONDENT**
**Arkansas Department of Correction**

<u>**RECOMMENDED DISPOSITION**</u>

**I.    <u>Procedure for Filing Objections</u>:**

This Recommended Disposition ("Recommendation") has been sent to Judge

Kristine G. Baker. Any party to this suit may file written objections with the Clerk of

Court. To be considered, objections must be filed within 14 days. Objections should be

specific and should include the factual or legal basis for the objection.

If parties do not file objections, they risk waiving the right to appeal questions of

fact. And, if no objections are filed, Judge Baker can adopt this Recommendation without

independently reviewing the record.

**II.    <u>Procedural Background</u>:**

A Pulaski County Circuit Court convicted Terry Lee of committing a terroristic

act, attempting to commit first-degree battery, and four counts of aggravated assault. *Lee*

*v. State*, 2013 Ark. App. 209, at 1 (unpublished). Mr. Lee received a firearm

enhancement and, consequently, was sentenced as a habitual offender to an aggregate

term of eighty-five years' imprisonment. *Id*.

Mr. Lee filed a timely appeal, claiming that the trial court erred by denying his directed-verdict motions and abused its discretion by refusing to instruct the jury on concurrent and consecutive sentences. He also argued that his convictions for terroristic act, attempted first-degree battery, and aggravated assault violated the double jeopardy clause of the United States Constitution. The Arkansas Court of Appeals affirmed Mr. Lee's convictions and sentence. *Id.*

Mr. Lee filed a timely *pro se* petition and amended petition for post-conviction relief. (Docket entry #13-10 at 16-25, #13-13 at 31-39) See Ark. R. Crim. P. 37. In the petitions, Mr. Lee claimed that his counsel failed to render effective assistance by: failing to investigate; failing to meet with Mr. Lee before the trial to discuss trial strategy; failing to employ a successful strategy to discredit the testimony of the State's witnesses; failing to strike certain jurors; failing to object to certain evidence; failing to raise proper directed-verdict motions; failing to object to the trial court pronouncing sentence on the same date as the convictions; and failing to raise a double-jeopardy claim. (#13-10 at 16-25, #13-13 at 31-39) *Lee v. State.*, 2016 Ark. 293, at 2.

Mr. Lee also raised other claims, including: violation of the double jeopardy clause; prosecutorial misconduct; illegal arrest; insufficient evidence; malicious prosecution; and biased trial participants. He also claimed that the trial court had erred by failing to hold a competency hearing; by illegally exercising jurisdiction due to an improper transfer; by failing to allow allocution; by using inconsistent verdict forms; and in sentencing him to consecutive, rather than concurrent, terms of imprisonment. (#13-10 at 20-23, #13-13 at 35-36) *Id.*

2

The trial court held two hearings on the post-conviction motions, at which Mr. Lee's trial counsel, his mother, and his sister testified. (#13-11 at 21-36 and #13-12 at 384-426) Mr. Lee cross-examined his trial counsel and argued his claims. (#13-11 at 28-36, #13-12 at 397-401)

The trial court denied relief, concluding that Mr. Lee's claims of trial error, illegal arrest, denial of allocution, inconsistent verdict forms, and consecutive sentences were either not cognizable in a Rule 37 proceeding or had been waived on direct appeal. *Lee*, 2016 Ark. 293, at 3. As to ineffective-assistance-of-counsel claims, the trial court concluded that there was no pattern of discrimination in jury selection; that counsel had made appropriate objections at trial; and that counsel had made appropriate directed verdict motions. *Id*. Additionally, the court found that Mr. Lee had failed to allege sufficient facts to support the claims that his lawyer failed to object to the timing of his sentencing and allowed him to be convicted of six felonies for one offense. (#13-10 at 26-31) *Id*.

Mr. Lee appealed the trial court's denial of his Rule 37 petition.[1] On appeal, he argued that the trial court erred in denying his ineffective-assistance-of-counsel claims for failure to adequately investigate; failure to object to the admission of certain evidence; failure to develop a different trial strategy; failure to strike certain jurors;

---

[1] Mr. Lee filed an untimely notice of appeal, but the Arkansas Supreme Court allowed him to proceed with a belated appeal. *Lee v. State*, 2016 Ark. 293, at 3-4.

failure to adequately move for directed verdict; and failure to object to the verdict on double jeopardy grounds. *Lee v. State*, 2017 Ark. 337, at 3-4.

Mr. Lee also claimed that the trial court erred in denying relief on six independent claims:

> (1) his convictions were double-jeopardy violations; (2) the trial court incorrectly determined that he was competent to be tried and should have ordered further evaluation; (3) the case was illegally transferred from one division to another within the judicial district; (4) prosecutorial misconduct that deprived him of sufficient discovery; (5) inconsistent and deficient jury verdict forms were used; and (6) lack of due process as a result of an illegal arrest, insufficient evidence, malicious prosecution, and female jurors who disclosed relationships with people involved with the case or who were otherwise potentially biased.

*Lee v. State*, 2017 Ark. 337, at 3.

The Arkansas Supreme Court remanded the case to the trial court for additional findings on Mr. Lee's claim that his trial counsel was ineffective for failing to make proper motions for directed verdict. *Lee*, 2016 Ark. 293, at 4-8. The appellate court also ordered the trial court to complete the record by ensuring that transcripts of both post-conviction hearings were filed. *Id*. at 7. The trial court was directed to file the supplemental order and transcripts within 60 days. *Id*. The trial court complied. *Lee v. State*, 2016 Ark. 464, at 2.

After supplemental briefing, the Arkansas Supreme Court held that there was no double jeopardy violation because the six criminal convictions were the result of six separate impulses from six separately fired shots. The Arkansas Court further held that the trial court had not clearly erred in determining that Mr. Lee failed to demonstrate fundamental error cognizable in Rule 37 proceedings. *Lee*, 2017 Ark. 337, at 2, 4. It also

held that Mr. Lee had failed to make the requisite showing of prejudice for his claims of ineffective assistance of counsel. The Court affirmed the denial of post-conviction relief. *Lee*, 2017 Ark. 337, at 2.

**III.    <u>Mr. Lee's Petition</u>:**

Mr. Lee raises sixteen claims in this federal petition for writ of habeas corpus:

1.    Ineffective assistance of counsel for failure to investigate (#2 at 10-24);

2.    Ineffective assistance of counsel for failure to object to evidence admitted at trial (#2 at 24-27);

3.    Ineffective assistance of counsel for failure to consult on a defense strategy (#2 at 28-29);

4.    Ineffective assistance of counsel for failure to challenge certain jurors during jury selection (#2 at 30-31);

5.    Ineffective assistance of counsel for failure to make a proper motion for directed verdict (#2 at 31-38);

6.    Ineffective assistance of counsel in failure to object to sentences that violated protection from double jeopardy (#2 at 38-39);

7.    Sentence imposed violates the double-jeopardy clause (#2 at 40-45);

8.    Violation of due process protection because Mr. Lee was legally incompetent to stand trial (#2 at 45-52);

9.    Lack of trial court jurisdiction due to improper transfer (#2 at 53-59);

10.    Prosecutorial misconduct that violated Arkansas Rules of Criminal Procedure 17.1, 17.3, 19.1, 19.2, and 19.6 (#2 at 60-69);

11.    Error in verdict forms (#2 at 70-75);

12.    Illegal arrested (#2 at 76-78);

13.    Insufficient evidence to support convictions and juror bias, in violation of 4th and 14th Amendments to the Constitution (#2 at 78-97);

14.    Abuse of trial court's discretion in refusing to instruct the jury on concurrent and consecutive sentences (#2 at 98-105);

15.    Denial of the right to allocution at trial (#2 at 106-107); and

16.    Denial of due process on appeal. (#2 at 108-111)

Director Kelley contends that Mr. Lee's claims are either procedurally defaulted or lack merit.[2] (#13)

IV.    **Facts:**

The Arkansas Supreme Court summarized the evidence presented at trial as follows:

> Lee and an unidentified man were outside Robert and Erica Brown's home on a night in 2009. While there, Lee got into an altercation with Robert and Archie Roberson. As Lee left, he threatened to return with a gun and "kill everyone in the house." About an hour later—when Robert went outside to move vehicles in the driveway—Lee appeared in the center of the street, and he fired eight shots toward Robert and the house. One bullet struck the home's window sill. Erica and three children were inside the house when the shooting began.

*Lee v. State*, 2017 Ark. 337, at 2.

V.    **Discussion:**

A. **Procedural Default**

Procedural default bars federal courts from reviewing the merits of a petitioner's claim in two circumstances: first, if the state court did not hear the claim because the

---

[2] Respondent Kelley also argued that Mr. Lee's petition (#2) should be dismissed, because the petition filed was not verified as required by 28 U.S.C. §2242. Mr. Lee, however, cured this defect by filing a verification on April 18, 2018. (#14)

prisoner failed to follow a state procedural rule, *Franklin v. Hawley*, 879 F.3d 307, 311 (8th Cir. 2018) (quoting *Martinez v. Ryan*, 566 U.S. 1, 9 (2012)); and second, if the petitioner failed to fairly present the claim in state court, and a state procedural rule would bar him from bringing the claim if he returned to state court. *Kennedy v. Kemna*, 666 F.3d 472, 480 (2012) (a claim is procedurally defaulted if a petitioner failed to raise it in state proceedings).

A habeas petitioner's default can be excused, but only if he can demonstrate cause for the default and actual prejudice flowing from the alleged violation of federal law; or if he can demonstrate that a failure to consider the claims would result in a fundamental miscarriage of justice. *Franklin*, 879 F.3d at 311 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Under the cause-and-prejudice standard, cause is established when some objective factor external to the defense impeded efforts to comply with the state's procedural rule. *Id*. at 313 (citing *Coleman*, 501 U.S. at 753).

Bringing a claim without an attorney is not usually deemed cause to excuse procedural default. *Id*. The United States Supreme Court, however, has carved out a limited exception. See *Martinez*, 566 U.S. 1. Where claims of *ineffective assistance of trial counsel* must be raised in an initial-review collateral proceeding, as is the law in Arkansas, procedural default will not bar a federal habeas court from hearing a *substantial* claim of ineffective-assistance-of-trial-counsel if, in the initial-review proceeding, the petitioner was not represented by counsel or if counsel in that proceeding was ineffective. *Martinez*, 566 U.S. at 17.

7

    1.  Claim 9 – Improper Transfer[3]

Mr. Lee claims that the state trial court lacked jurisdiction because the case was improperly transferred from one division of the Pulaski County Circuit Court to another. Mr. Lee's case was originally assigned to the Fourth Division of the Pulaski County Circuit Court, with Judge Herbert Wright presiding. Mr. Lee filed a *pro se* motion asking Judge Wright to recuse because the Judge had previously represented Mr. Lee. Judge Wright granted the motion and recused. The case was reassigned to the Seventh Division, with Judge Barry Sims presiding. (#13-2 at 81, 199, #13-10 at 28)

The Arkansas Supreme Court observed that a trial judge has the authority to preside over proceedings in any courtroom in any county within the judicial district for which that judge was elected. But, the Court rejected Mr. Lee's claim on another ground; that is, because it was improperly before the court. Under Arkansas law, the claim could not be raised in a post-conviction proceeding. *Lee*, 2017 Ark. 337, at 7 (citing *Davis v. Reed*, 316 Ark. 575 (1994)). Accordingly, Mr. Lee procedurally defaulted this claim.

    2.  Claim 10 – Prosecutorial Misconduct[4]

Mr. Lee claims that the state prosecutor failed to follow Arkansas Rules of Criminal Procedure 17.1, 17.3, 19.1, 19.2, and 19.6 involving discovery. More specifically, he complains that the prosecutor did not disclose certain evidence before

---

[3] Mr. Lee's "Argument 9." (#2 at 106-07)

[4] Mr. Lee's "Argument 5." (#2 at 60-69)

trial and, thus, prevented him from adequately preparing his defense. He also claims that the prosecutor added false information to his report.

Mr. Lee raised prosecutorial misconduct in his post-conviction petition, but the trial court dismissed the claim, finding that, "no such failure occurred." (#13-10 at 27) On appeal, the Arkansas Supreme Court rejected the claim on grounds that a claim of prosecutorial misconduct is not cognizable in a post-conviction proceeding. *Id*. at 8 (citing *Wood v. State*, 2015 Ark. 477). Mr. Lee's prosecutorial misconduct claim was not properly presented to the Arkansas courts and, therefore, is procedurally defaulted.

### 3. Claim 11 – Jury Instructions[5]

Mr. Lee complains that the trial court erred by giving the jury inconsistent verdict forms. He specifically objects that the aggravated-assault verdict forms included names, but other verdict forms (for terroristic act and attempted first-degree battery) did not. (#2 at 70-75) Both the trial court and the Arkansas Supreme Court found that this claim was not cognizable in a post-conviction petition.[6] (#13-10 at 29) *Lee*, 2017 Ark. 337, at 8. Accordingly, Mr. Lee procedurally defaulted this claim.

---

[5] Mr. Lee's "Argument 6." (#2 at 70-75)

[6] The Arkansas Supreme Court acknowledged that, in some cases, a defective verdict form could constitute fundamental error, but that in this case, Mr. Lee did not adequately explain how the allegedly defective verdict forms caused prejudice or juror confusion so as to show a fundamental error that would void the judgment. *Lee*, 2017 Ark. 337, at 8.

4.  Claim 12 – Illegal Arrest[7]

Mr. Lee claims that he was illegally arrested. The Arkansas Supreme Court held that the illegal arrest claim was not a claim of "fundamental error" that could be considered in a post-conviction proceeding. It held that an invalid arrest does not entitle a defendant to be discharged from responsibility for the offense. *Id*. at 8-9 (citing *Biggers v. State*, 317 Ark. 414 (1994)). Accordingly, the court did not consider the merits of the claim, and it is procedurally defaulted.

5. Claim 13 – Insufficient Evidence and Juror Bias[8]

Mr. Lee claims there is insufficient evidence to support his convictions. (#2 at 78-94) As support for this claim, Mr. Lee points to the Arkansas Supreme Court's remand of his case to the trial court for additional findings.

Mr. Lee misstates the reasons for remand. The Arkansas Supreme Court remanded the case to the trial court for findings on Mr. Lee's claim of *ineffective-assistance-of-counsel* based on failure to properly move for directed verdict—not on his stand-alone sufficiency-of-the-evidence claim, which is not cognizable in Rule 37.[9] *Lee*, 2016 Ark. 293, at 5-6 (remanding for additional findings); *Lee*, 2017 Ark. 337, at 8 (a direct

---

[7] Mr. Lee's "Argument 7." (#2 at 76-78)

[8] Mr. Lee's "Argument 7, Part 2." (#2 at 78-97) Respondent Kelley did not address Mr. Lee's claim of juror bias in her response.

[9] The Arkansas Supreme Court also ordered the trial court to settle the record on remand to include the transcripts of the Rule 37 hearings. *Lee*, 2016 Ark. 293, at 7.

challenge to the sufficiency of the evidence is not cognizable in Rule 37) (citing *Van Winkle v. State*, 2016 Ark. 98).

As to the stand-alone claim of insufficient evidence, Mr. Lee raised this claim on direct appeal. The Arkansas Supreme Court found that the directed verdict motions made at trial, "did not identify the specific elements that he now claims the State failed to prove," and that the question of sufficiency-of-the-evidence was not preserved for appeal. *Lee*, 2013 Ark. App. 209, at 3-4 (citing *Malone v. State*, 2012 Ark. App. 280). Because the Arkansas Court of Appeals held, on an independent and adequate state ground, that it could not address Mr. Lee's sufficiency of the evidence claim on appeal, the claim is procedurally defaulted.

Mr. Lee also complains he did not receive a fair trial because jurors were friends of the prosecutor's, the law enforcement officers', the detectives', and the witnesses' (#2 at 95-97) The trial court noted that the juror-bias issue was not raised at trial and rejected the claim on grounds that it was not cognizable in a post-conviction petition. (#13-10) The Arkansas Supreme Court agreed.[10] *Lee*, 2017 Ark. 337, at 9-10. Mr. Lee's juror bias claims are also procedurally defaulted.

---

[10] The Arkansas Supreme Court also noted that, "[i]n those specific instances of potential bias that Lee identified in the record on appeal, the prospective juror indicated that he or she believed the issue would not impair the juror's ability to serve fairly and impartially or the court excused that individual from service on the jury." *Lee*, 2017 Ark. 337, at 9-10.

6.  Claim 15 – Right to Allocution[11]

In his Rule 37 petition, Mr. Lee claimed he was denied his right of allocution. The trial court noted that Mr. Lee had not objected at trial and held that the claim was not cognizable in a post-conviction petition. (#13-10 at 28-29) Mr. Lee did not appeal the trial court's decision to the Arkansas Supreme Court. Accordingly, he procedurally defaulted the claim. See *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (failure to exhaust remedies properly in accordance with state procedure results in procedural default) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

7.  Cause and Prejudice

Because Mr. Lee procedurally defaulted these claims, he may be excused from the default by establishing cause for the default and actual prejudice because of an alleged violation of federal law; or by demonstrating that a failure to consider the claim would result in a fundamental miscarriage of justice or actual innocence.[12] *Coleman*, 501 U.S. 722, 750 (1991).

---

[11] Mr. Lee's "Argument 9." (#2 at 106-07)

[12] Mr. Lee represented himself in his post-conviction proceedings, and he points to *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013) to support his assertion that his procedural default should be excused. (#20 at 109) The *Martinez* exception, however, excuses only the procedural default of claims of ineffective assistance of trial counsel, not claims of trial error. See *Dansby v. Hobbs*, 766 F.3d 809, 833-34 (8th Cir. 2014), *cert. denied*, 136 S. Ct. 297 (2015). Because none of Mr. Lee's procedurally defaulted claims are ineffective-assistance-of-counsel claims, *Martinez* does not apply.

Cause is established when some objective factor external to the defense impedes efforts to comply with the State's procedural rule. *Franklin*, 879 F.3d 307, 313 (8th Cir. 2018) (citing *Coleman* 501 U.S. at 753). Here, Mr. Lee has not claimed that an objective factor external to the defense impeded his efforts to comply with the State's procedural rules. Because Mr. Lee has not established cause, the Court need not address prejudice. *McCleskey v. Zant*, 499 U.S. 467, 502 (1991); *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

### 8. Miscarriage of Justice

To establish a miscarriage of justice adequate to overcome a procedural bar, a petitioner must come forward with *new* evidence to support a claim of *actual* innocence. *Nash v. Russell*, 807 F.3d 892, 898 (8th Cir. 2015) (citing *Schlup v. Delo,* 513 U.S. 298 (1995)). The United States Supreme Court has described "new reliable evidence," as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court of Appeals for the Eighth Circuit has further explained that *new evidence* is limited to evidence that was not available at trial and could not have been discovered earlier through the exercise of due diligence. *Nash*, 807 F.3d at 899 (quoting *Amrine v. Bowersox*, 238 F.3d 1023, 1028 (8th Cir. 2001)).

Mr. Lee claims that failure to consider his claims will result in a fundamental miscarriage of justice because his claims are "substantial." (#20 at 109, 122, 136, 148) He reiterates the arguments raised in his habeas petition, but he has not come forward with any *new*, *reliable* evidence to establish actual innocence.

13

Mr. Lee also claims a miscarriage of justice, because the Arkansas Supreme Court remanded the case to the trial court to make additional findings of fact in support of its conclusion that Mr. Lee's counsel was not ineffective for failing to properly move for directed verdict. (#20 at 108, 120-21, 134, 143-44, 146, 168-79, 181) Mr. Lee claims that, on remand, the trial court "refuse[d] to respond to all ineffective assistance of counsel claims nor independent claims in a timely matter [sic] that was order by the Arkansas Supreme Court." (#20 at 181)

Again, Mr. Lee misunderstands the Arkansas Supreme Court's remand orders. It first remanded the case to the trial court to settle the record and for additional findings of fact on Mr. Lee's allegation that counsel was ineffective for failing to make an appropriate directed-verdict motion. *Lee*, 2017 Ark. 337, at 3. The trial court complied, and the Arkansas Supreme Court set a briefing schedule. *Id.*; see also *Lee*, 2016 Ark. 464, at 1-2.

Mr. Lee then filed a motion for reversal and dismissal with the Arkansas Supreme Court alleging that the trial court "disobeyed" the Arkansas Supreme Court by "failing to file supplemental findings of fact" in compliance with the court's remand opinion. *Lee*, 2016 Ark. 464, at 2. The Arkansas Supreme Court stated that the "trial court [had] complied with this court's opinion" and denied his motion. *Id*. It also assumed that the trial court had not provided Mr. Lee with a copy of the supplemental order entered on remand. Accordingly, the Court entered a second order remanding the case directing the trial court to mail a copy of the supplemental order to Mr. Lee. *Id*. at 2-3.

Mr. Lee's miscarriage-of-justice claim is based on his erroneous belief that the Arkansas Supreme Court remanded the case for additional findings of fact on *all* of the claims he raised in his Rule 37 petitions. His assertion that the trial court failed to comply with the Arkansas Supreme Court's directions in its remand orders misses the mark.

Because Mr. Lee has not established cause and prejudice or a miscarriage of justice sufficient to excuse his procedural default of claims 9-13, and 15, the claims are procedurally defaulted.

### B. Adjudicated Claims

#### 1. Standard

A federal habeas petitioner who challenges a matter adjudicated by a state court on the merits must show that the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To decide whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact, this Court must "train its attention on the particular reasons—both legal and factual—why state courts rejected the state prisoner's federal claims." *Wilson v. Sellers*, __U.S. __, __, 138 S. Ct. 1188, 1191-92 (2018) (quoting *Hittson v. Chatman*, __ U.S. __, __, 135 S. Ct. 2126, 2126 (2015)). The Court must also give appropriate deference to the state court's decision. *Id*. (citing *Harrington v. Richter*, 562 U.S. 86, 101–102 (2011)).

As used in the statute, *contrary to* and *unreasonable application* have "independent meaning." See *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The *contrary to* clause "suggests that the state court's decision must be substantially different from the relevant precedent of [the Supreme] Court." *Id*. (defining *contrary* as "diametrically different," "opposite in character or nature," or "mutually opposed"). "An 'unreasonable application' of Supreme Court precedent occurs when a state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context." *Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016), *cert. denied,* 137 S. Ct. 821 (2017) (citing *Williams*, 529 U.S. at 407).

2.  Ineffective Assistance of Counsel

Mr. Lee raises six ineffective-assistance-of-counsel claims here that he properly raised in his State proceedings. In its opinion addressing Mr. Lee's ineffective-assistance claims, the Arkansas Supreme Court applied the standard set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984) to determine whether Mr. Lee's counsel's performance was deficient and whether deficient performance prejudiced the defense. *Lee*, 2017 Ark. 337, at 10. The Arkansas Supreme Court's decision was not contrary to relevant Supreme Court precedent.

The question here is whether the Arkansas Supreme Court unreasonably applied federal law or unreasonably determined the facts of Mr. Lee's case when it denied his claims of ineffective-assistance-of-counsel.

a. Claim 1 – Failure to Investigate[13]

Mr. Lee claims that his counsel was ineffective for failing to investigate Detective Gibbons, witnesses, an alleged false report, and the pictures of the street and the house introduced as evidence at trial. Mr. Lee complains that his counsel's failure to investigate allowed a detective to testify that a bullet hit the window sill of the Brown's house without any direct proof.

The Arkansas Supreme Court addressed Mr. Lee's failure-to-investigate claim. It noted that a petitioner asserting that his counsel failed to investigate, "must show that further investigation would have been fruitful and that the specific materials the petitioner identifies that counsel could have uncovered would have been sufficiently significant to raise a reasonable probability of a different outcome at trial." *Lee*, 2017 Ark. 337, at 14 (citing *Young v. State*, 2015 Ark. 65, at 6).

The Arkansas Supreme Court observed that Mr. Lee had failed to show that there were materials his counsel could have found upon investigation that would have raised a reasonable probability of a different outcome at trial. *Id*. at 15. It stated:

> There was testimony at trial about the blank CD, that it was thought to contain pictures taken at the crime scene and that there was no backup made. The officer who took the missing pictures testified about why he took the pictures, including the fact that one specific photograph was to show that there was a bullet hole in a window sill that the officer had noticed. Counsel questioned the detective about inconsistencies in Erica [Brown]'s testimony and in her prior statements, and assuming for the purpose of this analysis that counsel had not been aware of the report, Lee does not point out any additional information that might have been more effective in discrediting

---

[13] Mr. Lee's "Argument 1." (#2 at 10-24)

her testimony, despite Lee's conclusory allegations that the reports could have been used for impeachment. Neither conclusory statements nor allegations without factual substantiation are sufficient to overcome the presumption of competence and cannot provide a basis for postconviction relief.

*Id.* at 15.

Mr. Lee's trial counsel argued to the jury that there were no photographs of the crime scene taken immediately after the incident and questioned the detective about the inconsistencies in Ms. Brown's testimony. (#13-3 at 45, #13-4 at 26-34) Mr. Lee has not established that the Arkansas Supreme Court unreasonably applied *Strickland* or unreasonably determined the facts in denying his failure to investigate claim.

b.   Claim 2 – Failure to Object to Evidence[14]

Mr. Lee complains that his counsel was ineffective for failing to object to evidence introduced at trial, including bullet shells, a photo of bullet shells, and photos of the Brown's house. The Arkansas Supreme Court noted that to prevail on an ineffective-assistance-of-counsel claim for failure to object, the petitioner has the burden to identify the specific evidence to which counsel should have objected and to provide meritorious grounds for an objection. *Lee*, 2017 Ark. 337, at 17 (citing *Henington v. State*, 2012 Ark. 181 at 6).

Mr. Lee contends that the photographs were not taken contemporaneously with the incident and failed to accurately show the bullet hole or depict the scene

_____

[14] Mr. Lee's "Argument 1." (#2 at 24-27)

as it appeared on the night of the incident. He further claims that the shell casings were inadmissible because there were no "crime scene" photographs showing where the casings were collected.

The Arkansas Supreme Court correctly observed that there was testimony about the bullet hole in the house from Erica Brown and other witnesses. (#13-3 at 64, 231-32, #13-4 at 22) Additionally, there was testimony that the photos, while not taken contemporaneously with the incident, accurately depicted the scene at the time of the incident.[15] (#13-3 at 74-76) There was also testimony about how the shell casings were collected, cataloged, and stored prior to trial. (#13-4 at 20-22)

The Arkansas Supreme Court, applying Arkansas Rule of Evidence 401, concluded that the evidence was relevant; the photographs were helpful to explain testimony; and the shell casings served to corroborate the officer's testimony and aided the jury in understanding the testimony. *Lee*, 2017 Ark. 337, at 18-19. The court held that, "[t]he bases that Lee proposes for objections to the admission of the shells and the photographs are the types of issues that go to the weight of the evidence and the credibility of the witnesses rather than presenting a question of law for the court." *Id*. at 19 (citations omitted). The Arkansas Supreme Court concluded that Mr. Lee had failed to offer a meritorious basis for an objection to

---

[15] Mr. Lee's trial counsel testified at the Rule 37 hearing that he went to the Brown's house, and "it was shot up." (#13-11 at 29)

any of the evidence at issue, and that counsel's failure to object was not ineffective assistance. *Id*. This conclusion was not an unreasonable application of federal law or determination of the facts. See *Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010) (when an underlying objection has no merit, counsel's failure to make the objection at trial cannot constitute ineffective-assistance).

### c. Claim 3 – Failure to Consult[16]

Mr. Lee complains that his counsel was ineffective for failing to consult with him about a defense strategy. Mr. Lee raised this claim in the state courts. The courts found that Mr. Lee had not come forward with an alternative strategy he would have had counsel adopt. The Arkansas Supreme Court further found that Mr. Lee had failed to demonstrate that the strategy that counsel adopted, which was to discredit the identification of Mr. Lee and to point out inconsistences and suggest that his companion might have been the shooter, was not reasonable. *Lee*, 2017 Ark. 337, at 15.

In coming to its conclusion, the Arkansas Supreme Court stated that, "[c]ounsel is allowed great leeway in making strategic and tactical decisions." *Id*. at 16 (citing *Williams v. State*, 2016 Ark. 459). And where a decision by counsel was a matter of trial tactics or strategy and is supported by reasonable professional judgment, counsel's decision is not a basis for post-conviction relief. *Id*. (citing *Adams v. State*, 2013 Ark. 174).

---

[16] Mr. Lee's "Argument 1." (#2 at 28-29)

The court observed that, at the Rule 37 hearing, Mr. Lee's counsel testified about the investigation that he conducted and his reasons for developing the defense strategy. *Id*. Mr. Lee failed to demonstrate both that further discussion or investigation would have produced information to develop an alternate strategy or that counsel's adoption of the trial strategy used was unreasonable.

The Arkansas Supreme Court did not unreasonably apply federal law in rejecting Mr. Lee's claim. See *Noe v. U.S.*, 601 F.3d 784 (8th Cir. 2010) (trial counsel's decision not to pursue one defense over another was reasonable trial strategy) (citing *James v. Iowa*, 100 F.3d 586, 590 (8th Cir. 1996) ("Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful.")).

Moreover, the Arkansas Supreme Court did not unreasonably determine the facts. Trial counsel testified at the Rule 37 hearing that he, "had a few conversations [with Mr. Lee] early on about the case," and that once they got closer to trial they, "discussed the possible strategies." (#13-11 at 23) He stated that, "ultimately it came down to is that the person that matched the description of Mr. Lee did not match the description of the lady that testified about the shooting." (#13-11 at 23) Counsel estimated that he or someone from his office had approximately ten encounters with Mr. Lee prior to trial. (#13-11 at 28)

d.  Claim 4 – Failure to Object to Certain Jurors[17]

Mr. Lee complains his counsel was ineffective for failing to prevent the prosecutor

from selecting female jurors; and for failing to strike a juror whose name was not on the

juror list, a juror who knew Ms. Brown, and a juror who stated she was going to believe

everything the police, prosecutor and witnesses said.

Mr. Lee raised this claim in the state courts. The Arkansas Supreme Court first

addressed it as part of Mr. Lee's due process claim. It noted that prospective jurors who

stated that they could lay aside their prior impressions or opinions and render a verdict

based on the evidence presented at trial were qualified to serve as jurors. *Lee*, 2017 Ark.

337, at 9. Further, the Court stated that jurors cannot be disqualified based on gender and

that Mr. Lee did not identify any bias that fell within a statutorily provided category. *Id*.

(citing *Owens v. State*, 354 Ark. 644 (2003)).

The Arkansas Supreme Court's rejection of Mr. Lee's claim was not contrary to

federal law. Courts presume that a prospective juror is impartial, and it is a high hurdle to

establish juror partiality. *U.S. v. Needham*, 852 F.3d 830, 839 (8th Cir. 2017) (citing

*Moran v. Clarke*, 443 F.3d 646, 650 (8th Cir. 2006)). "Essentially, to fail this standard, a

juror must profess his inability to be impartial and resist any attempt to rehabilitate his

position." *Moran*, 443 F.3d at 650-51 (holding that the district court did not abuse its

--------

[17] Mr. Lee's "Argument 1." (#2 at 30-31)

discretion in denying a motion to strike jurors that acknowledged difficulty being impartial, because the jurors "consistently stated that they could be impartial").

The Eighth Circuit has recognized that juror bias "may be implied [only] in certain egregious situations." *Manuel v. MDOW Ins. Co.*, 791 F.3d 838, 843 (8th Cir. 2015) (quoting *Sanders v. Norris*, 529 F.3d 787, 792 (8th Cir. 2008)). Egregious situations are limited to those "in which 'the relationship between a prospective juror and some aspect of the litigation ... [makes it] highly unlikely that the average person could remain impartial.'" *Id.* (ellipsis and alteration in original) (quoting *Sanders*, 529 F.3d at 792). "[E]xamples might include a revelation that a juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *U.S. v. Tucker*, 243 F.3d 499, 509 (8th Cir. 2001) (quoting *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring)). Mr. Lee's complaints about jurors who were not on the jury list or who worked with a witness do not rise to the level of an egregious situation sufficient to create a presumption of bias.

The Arkansas Supreme Court found that in those, "specific instances of potential bias that Lee identified in the record on appeal, the prospective juror indicated that he or she believed the issue would not impair the juror's ability to serve fairly and impartially or the court excused that individual from service on the jury." *Lee*, 2017 Ark. 337, at 9-10, 16. Mr. Lee has not offered evidence contradicting the state court's finding that the

23

jurors were not actually biased, and the Court must accept the finding as true.[18] *Sanders*, 529 F.3d at 791 (citing 28 U.S.C. §2254(e)(1)) (other citation omitted).

> e. Claim 5 – Failure to Properly Move for Directed Verdict[19]

Mr. Lee complains that his counsel was ineffective for failing to file a proper motion for directed verdict. On direct appeal, Mr. Lee claimed there was insufficient evidence to support his conviction. The Arkansas Supreme Court held that Mr. Lee's directed-verdict motions were, "only recitations of the elements of each charged crime," and that, because his counsel did not identify specific elements that the State failed to prove, Mr. Lee's insufficient evidence claims were not preserved for appeal. *Lee*, 2013 Ark. App. 209, at 3-4.

Mr. Lee raised an ineffective-assistance-of-counsel claim in his post-conviction petition, arguing that counsel was ineffective for failing to raise a proper directed verdict motion and preserve his sufficiency-of-the-evidence claims for appeal. In its supplemental order denying post-conviction relief, the trial court found that, although his counsel's performance was deficient in that regard, Mr. Lee had not demonstrated prejudice to establish ineffective assistance of counsel. (#13-19 at 232-34) The Arkansas Supreme Court agreed.

---

[18] Mr. Lee's trial counsel testified at the Rule 37 hearing that it was part of his trial strategy to seat the juror who had worked with Ms. Brown because he thought someone who worked with her would have probably known that "she was not reliable." (#13-11 at 25)

[19] Mr. Lee's "Argument 1." (#2 at 31-38)

As to Mr. Lee's first claim that counsel should have argued that the State failed to show that he was the one who committed the crime, the court noted that three witnesses identified Mr. Lee as the shooter. *Lee*, 2017 Ark. 337, at 12 (citing *Ewell v. State*, 375 Ark. 137 (2008) ("unequivocal testimony identifying the appellant as the culprit is sufficient to sustain a conviction.")). The court further noted that Mr. Lee's challenges to the reliability of the identifications, "are not sufficient to disturb the fact-finder's decision concerning the credibility of the witness." *Id.*

Mr. Lee also claimed there was no evidence of intent to support either the terroristic act or aggravated assault convictions. The Arkansas Supreme Court rejected this claim, stating:

> A person's state of mind at the time of a crime is seldom apparent and ordinarily cannot be proven by direct evidence. *Noble v. State*, 2017 Ark. 142, 516 S.W.3d 727. For this reason, members of the jury are allowed to draw upon their common knowledge and experience to infer intent from the circumstances. *Id.* Because of the difficulty in ascertaining a person's intent, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*
>
> Lee apparently misconstrues the criminal intent required by the two statutes. Arkansas Code Annotated section 5–13–310(a) (Repl. 2013), in relevant part, provides that "[a] person commits a terroristic act if, while not in the commission of a lawful act, the person . . . [s]hoots at an occupiable structure with the purpose to cause injury to a person or damage to property." There is no requirement in the statute that Lee had to aim with an intention to hit the house rather than Robert. Lee shot at an occupiable structure when he intentionally fired toward the Browns' home. It was necessary that he do so in order to aim at Robert, who was in front of the house. Common sense would permit the jury to infer that Lee intended to injure Robert in doing so and that he also intended the natural and probable consequence that bullets not striking the intended target would hit the house. Indeed, there was testimony that at least one did.
>
> Arkansas Code Annotated section 5–13–204(a) defines aggravated assault, as used in this case, to occur when "under circumstances manifesting extreme indifference to the value of human life," the perpetrator "engages in

conduct that creates a substantial danger of death or serious physical injury to another person." The purpose the jury was required to find was a purpose to engage in the conduct that created the risk of injury, accompanied by an exhibition of extreme indifference to the value of human life. Despite Lee's assertion to the contrary, it was not necessary for the State to demonstrate that he aimed the gun at the individual occupants of the house or intended to shoot them. Firing the gun in the direction of Robert and the Browns' home placed Robert's and the occupants' lives in danger and demonstrated the requisite indifference. Lee therefore failed to show that the motion for directed verdict, even if properly preserved for appeal with the specific arguments Lee would have had counsel make, would have been meritorious.

*Lee*, 2017 Ark. 337, at 12–14.

The Arkansas Supreme Court reasonably applied *Strickland* and concluded that Mr. Lee had not established prejudice from his counsel's failure to properly move for directed verdict.

Mr. Brown insists that there is no proof that a bullet hit the Brown's house and that Ms. Brown's testimony was inconsistent. (#20 at 36, 37) As noted, the Arkansas Supreme Court found that there were three witnesses who identified Mr. Lee as the shooter, and there was trial testimony that at least one bullet struck the window sill on the Brown's home. *Id*. at 2, 12. Mr. Lee attacks the credibility of the witnesses, but he has not established that the state court's determination of the facts was unreasonable given the evidence introduce at trial.

26

f.  Claim 6 – Failure to Object to Double Jeopardy[20]

For his final ineffective-assistance-of-counsel claim, Mr. Lee complains that his counsel was ineffective for failing to object to his convictions for terroristic act, attempted first-degree battery, and four aggravated-assault charges on grounds that the convictions violated the double-jeopardy clause of the United States Constitution. Specifically, Mr. Lee contends that the three different crimes shared the same elements in that all three required the State to prove that he shot a gun for the purpose of causing injury. (#2 at 40-45) Mr. Lee contends that, even though there were multiple shots fired, the incident at the Brown's home was a continuing course of conduct for which the trial court could impose only one penalty.

Like the Arkansas Supreme Court, this Court must first address whether Mr. Lee's double-jeopardy claim has merit. The double-jeopardy clause protects defendants from receiving a total punishment that exceeds what was authorized by the legislature. *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (citations omitted); *Velez v. Clarinda Corr. Facility*, 791 F.3d 831, 834 (8th Cir. 2015). "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977)

---

[20] Mr. Lee's "Argument 1." (#2 at 38-39)

When a defendant has been charged with multiple offenses under the same statute and arising out of the same transaction, courts must look to whether the state legislature intended the facts underlying each count to constitute a separate unit of prosecution. *Velez*, 791 F.3d at 834 (citing *Bell v. U.S.*, 349 U.S. 81, 83-84 (1955)). The double-jeopardy clause is not violated if the legislature prescribes multiple punishments under the same statute and conceivably arising from the same incident. *Id.* (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983)). A habeas court's role in review is limited to determining what the state legislature intended and, whether cumulative punishment is authorized, is a question of state law. *Dodge v. Robinson*, 625 F.3d 1014, 1017-18 (8th Cir. 2010).

Here, the Arkansas Supreme Court stated that the relevant question, under Arkansas law, was whether Mr. Lee's actions were one continuous course of conduct or a series of individual acts. *Lee*, 2017 Ark. 337, at 5. The court stated that, "[i]f it is the individual acts that are prohibited, then each act is punishable separately. If it is the course of action that is prohibited, then there can be only one penalty. Where there is a single impulse, only one charge lies, but if there are separate impulses, separate charges lie even if all are part of a common stream of action." *Id.* (internal citations omitted).

The Arkansas Supreme Court held that, under Arkansas law, Mr. Lee could have been tried and convicted for the commission of a terroristic act for each shot fired. *Id.* (citing *McLennan v. State*, 337 Ark. 83 (1999)). Further, it held that aggravated assault and first-degree battery, as described in the applicable statutes, are offenses that arise from individual acts completed; in this case, each time Mr. Lee fired the gun. *Id.* at 5-6

28

(citing *Britt v. State*, 261 Ark. 488 (1977) (holding that neither robbery nor battery is defined as a continuing course of conduct)). The Arkansas Supreme Court concluded that, "because there were six separate criminal violations resulting from six separate impulses in the firing of six separate shots, no double-jeopardy violation occurred." *Id*. at 2.

This Court is bound by the Arkansas Supreme Court's determination that the Arkansas legislature intended cumulative punishment for these offenses. *Dodge*, 625 F.3d at 1019. Further, Mr. Lee has not established an unreasonable application of the facts considering the evidence presented. The Arkansas Supreme Court's conclusion, that Mr. Lee's convictions and sentence did not violate double jeopardy, is not an unreasonable application of federal law or determination of the facts.

Having concluded that Mr. Lee's double-jeopardy claim lacks merit, the Court finds no error in the Arkansas Supreme Court's conclusion that Mr. Lee's counsel was not ineffective for failing to raise a meritless-double-jeopardy claim. *Id*. (holding that counsel was not deficient for failing to raise a meritless claim) (citing *Thomas v. U.S.*, 951 F.2d 902, 905 (8th Cir. 1991)).

3.  Claim 7 – Double Jeopardy[21]

As discussed above, the Arkansas Supreme Court's conclusion that Mr. Lee's

convictions and sentence did not violate the double-jeopardy clause is not an

unreasonable application of federal law or application of the facts.

4.  Claim 8 – Due Process/Competency[22]

Mr. Lee complains that the trial court should have ordered a psychiatric

examination to determine his fitness to proceed to trial, and that its failure to do so

violated his due process rights. He asserts that his "irrational behavior" at a hearing after

his first mental-health evaluation and his refusal to participate in the first evaluation

should have raised "reasonable doubt" about his competence. (#2 at 50-51)

Early in the case, the trial court ordered a mental-health evaluation for Mr. Lee at

the request of the public defender. (#13-2 at 94) Mr. Lee refused to participate in the

evaluation, but the evaluator submitted a report to the trial court anyway, concluding that

Mr. Lee was competent to stand trial. (#13-2 at 99-105) *Lee*, 2017 Ark. 337, at 6. After a

hearing at which the trial court and Mr. Lee disagreed over the need for further evaluation

and Mr. Lee's refusal to participate, the trial court ordered further evaluation.[23] (#13-2 at

210-214)

_____

[21] Mr. Lee's "Argument 2." (#2 at 40-45)

[22] Mr. Lee's "Argument 3." (#2 at 45-52)

[23] Mr. Lee and his retained trial counsel both moved to withdraw the request for a mental
evaluation. Mr. Lee's retained counsel represented to the court at a hearing that he had

An evaluator conducted a second evaluation, with Mr. Lee's partial cooperation. (#13-2 at 169-75) *Id*. at 6-7. The examiner reported a diagnosis of antisocial personality disorder and concluded that Mr. Lee was competent to stand trial. (#13-2 at 169-75) *Id*.

The Arkansas Supreme Court found that, "[t]he doctor who examined Lee for the second report stated that, although Lee exhibited the disorder, Lee had no mental disease or defect, that he had the capacity to understand the proceedings against him, and that he had the capacity to assist effectively in his own defense." (#13-2 at 169-75) *Id*. at 6-7. Based on the second report, the trial court found Mr. Lee competent. *Id*. at 7.

The Arkansas Supreme Court rejected Mr. Lee's argument that the trial court erred by failing to order an additional evaluation because Mr. Lee did not offer any evidence to establish that he was not competent at the time of trial. *Id*. at 7. The Court held that, "the mere fact that Lee suffered from a disorder such as antisocial personality disorder without more, did not render him incompetent to stand trial." *Id*. (citing *Ware v. State*, 348 Ark. 181 (2002)).

The Arkansas Supreme Court did not unreasonably apply federal law in rejecting Mr. Lee's claim. See *U.S. v. Kinderlen*, 569 F.3d 358, 363 (8th Cir. 2009) ("'bizarre, volatile, and irrational behavior' does not compel a finding of incompetence") (quoting *Vogt v. U.S.*, 88 F.3d 587, 591 (8th Cir. 1996)). Nor did the state court unreasonably determine the facts in rejecting Mr. Lee's due process claim. Mr. Lee offered no

---

reviewed Mr. Lee's mental evaluations from prior cases, spent time with Mr. Lee and his mother, and believed Mr. Lee was competent to stand trial. (#13-2 at 227)

supporting evidence in the state courts or here for his contention that a third evaluation would have negated conclusions of the two experts who found him competent.

5.    Claim 14– Jury Instructions[24]

Mr. Lee claims that the trial court abused its discretion when it refused to instruct the jury on concurrent and consecutive sentences. A state prisoner is rarely granted federal habeas relief, however, based on a jury instruction error. "The formulation of jury instructions primarily concerns the application and interpretation of state law." *Louisell v. Dir. of Iowa Dept. of Corr.*, 178 F.3d 1019, 1022 (8th Cir. 1999) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (a federal habeas court may not "reexamine state-court determinations on state-law questions")).

A jury instruction defect may warrant relief if the petitioner can establish the instruction error by itself, "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Before a federal court may overturn a state conviction, it must be established, "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Id*. at 146.

Here, Mr. Lee contends the trial court erred by failing to give a jury instruction on consecutive sentences that Mr. Lee's trial team offered. (#13-4 at 132, 203) The trial

---

[24] Mr. Lee's "Argument 8." (#2 at 98-105)

court rejected the instruction stating that, "it's discretionary and I'm not giving that." (#13-4 at 132, 203)

During closing arguments in the sentencing phase of the trial, Mr. Lee's counsel[25] told the jury there was an instruction regarding concurrent or consecutive sentences and argued that the jury should recommend running any sentences concurrently. (#13-4 at 148) The prosecution did not object to this statement by explaining that no such instruction had not been given. During deliberations the jury sent a letter to the judge asking, "[d]o we make the decision of concurrent or consecutive, and where is that paperwork?" (#13-4 at 218) *Lee*, 2013 Ark. App. 209 at 4. After conferring with counsel for both parties, the trial court responded that "the ultimate decision lies with the court." (#13-4 at 152-53, 218) *Id*.

The jury imposed sentences, and the trial court ordered that all of Mr. Lee's sentences run consecutively, except that it ran his fifteen-year aggravated-assault sentences concurrent with his other sentences. *Id*. The result was an aggregate sentence of eighty-five years' imprisonment – "forty years' imprisonment for committing a terroristic act, thirty years' imprisonment for criminal attempt to commit first-degree battery, fifteen years' imprisonment each of the counts of aggravated assault, and fifteen years'

---

[25] Mr. Lee was represented by a team of two attorneys at trial. Counsel who gave the closing argument was not the same lawyer who participated in the jury instruction conference.

imprisonment for employing a firearm in the commission of his crimes."[26] *Lee*, 2013 Ark. App. 209 at 1, 4.

The Arkansas Supreme Court addressed Mr. Lee's claim of trial-court error on direct appeal. It cited relevant Arkansas law providing that when multiple sentences are imposed, the sentence are to run concurrently unless, "upon recommendation of the jury or the court's own motion, the court orders the sentences to run consecutively." The trial court is not, "bound by a recommendation of the jury concerning a sentencing option." *Lee*, 2013 Ark. App. 209, at 4 (quoting ARK. CODE ANN. § 5-4-403). The court stated that, "in making a decision between concurrent and consecutive sentences, the trial judge should make it clear that it is his or her discretion being exercised when entering the sentences and not the jury's," and noted that the court must exercise its judgment and not mechanically impose the same sentence in every case. *Id*. at 5 (citing *Wing v. State*, 14 Ark. App. 190 (1985) and *Acklin v. State*, 270 Ark. 879 (1980)).

The Arkansas Supreme Court found that the trial court had exercised its discretion by running the aggravated-assault sentences concurrently with Mr. Lee's other consecutive sentences. *Id*. It held that, because the decision was within the trial court's discretion, the court did not err by failing to give the concurrent-sentence instruction to the jury. *Id*. at 5. The state court's interpretation of Arkansas law is binding, and the failure to give the concurrent-sentence instruction does not rise to the level of a

---

[26] Mr. Lee was sentenced as a habitual offender. *Lee*, 2013 Ark. App. at 1.

constitutional violation. *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991), *cert. denied* 502 U.S. 1043 (1992) (citing *Williams v. Armontrout*, 877 F.2d 1376, 1383 (8th Cir. 1989)) (holding Missouri trial court's failure to instruct on excusable homicide was without merit).

>    6.   Clam 16 – Due Process on Appeal[27]

Mr. Lee claims that the Arkansas Supreme Court denied him due process on appeal because it denied his "motion for reversal and dismissal." (#2 at 111) Mr. Lee's claim fails to state a constitutional violation.

Mr. Lee appealed the denial of post-conviction relief to the Arkansas Supreme Court. The court remanded the case for, "the purpose of settling the record and for additional findings of fact addressing Lee's allegation of ineffective assistance of counsel based on trial counsel's failure to make sufficient directed-verdict motions." *Lee*, 2016 Ark. 464, at 1. The supplemental record and order were timely filed, and the court set a briefing schedule. *Id.* at 2.

Mr. Lee then filed a motion for reversal and dismissal with the Arkansas Supreme Court alleging that the trial court "disobeyed" the Arkansas Supreme Court by failing to make additional findings of fact on all the claims he raised in his post-conviction petitions. (#13-22 at 3-4) The Arkansas Supreme Court rejected Mr. Lee's claim and denied the motion. *Id.* at 2-3.

---

[27] Mr. Lee's "Argument 10." (#2 at 108-111)

Again, Mr. Lee's due process claim here is based on his mistaken assertion that the Arkansas Supreme Court remanded his case for additional findings of fact on *all* the claims he raised in his post-conviction petitions. (#2 at 109-110) As the Arkansas Supreme Court explained in its opinion denying Mr. Lee's motion, it remanded the case for additional findings on only one issue – whether counsel was ineffective for failing to file proper directed verdict motions, and the trial court's supplemental order complied with that opinion. *Id*. at 1-2.

The Arkansas Supreme Court's interpretation of its opinion and finding that the trial court complied with it is entitled to deference, and Mr. Lee's due process claim lacks merit.

## VI.    <u>Certificate of Appealability</u>:

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr. Lee has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c) (1)-(2). In this case, Mr. Lee has not provided a basis for the Court to issue a certificate of appealability, and the Court recommends that Judge Baker deny a certificate of appealability.

**VII.  Conclusion:**

The Arkansas Supreme Court's decision to deny Mr. Lee relief was neither an unreasonable application of federal law nor an unreasonable determination of facts considering the evidence presented. The Court recommends that Mr. Lee's petition for writ of habeas corpus (#2) be DENIED and DISMISSED, with prejudice; his motion for evidentiary hearing (#22) be DENIED as moot; and a certificate of appealability be DENIED.

DATED this 15th day of October, 2018.

UNITED STATES MAGISTRATE JUDGE